IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BELCHER PHARMACEUTICALS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HOSPIRA, INC., <br><br> Defendant. | C.A. No. 17-775-LPS |

## MEMORANDUM ORDER

WHEREAS, Defendant Hospira, Inc. ("Hospira") moved for a determination that this case is exceptional and for attorneys' fees and related costs under 35 U.S.C. § 285 (*see* D.I. 258);

WHEREAS, Hospira and Plaintiff Belcher Pharmaceuticals, LLC ("Belcher") submitted briefing and other materials regarding Hospira's fee motion (*see generally* D.I. 259, 260, 261, 262, 268, 272);

WHEREAS, having carefully considered the briefing and related materials, the Court heard argument on Hospira's fee motion by teleconference on January 18, 2022;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Hospira's motion for attorneys' fees (D.I. 258) is **GRANTED IN PART** and **DENIED IN PART**.

The Court's Order is consistent with the bench ruling announced at the conclusion of the hearing, excerpts of which are reproduced below.[1]

---

[1] The Court adopts the full bench ruling. For clarity, the excerpt of the transcript contains some minor stylistic adjustments beyond those explicitly called out below.

1

Let me first talk about the law. We know that the motion arises under principally 35 U.S.C. § 285, which allows the Court in exceptional [patent] cases to award reasonable attorney fees to the prevailing party . . . .

An exceptional case is one that stands out from others with respect to the substantive strength of a party's litigating position, considering both the governing law and the facts of the case or the unreasonable manner in which the case was litigated.[2]

It's the burden of the movant, here Hospira, to prove exceptionality and to do so by a preponderance of the evidence. Ultimately, the determination of whether a case is exceptional lies within the Court's discretion, based on the totality of the circumstances. And even once the Court finds that a patent case is exceptional, it still retains the discretion to deny an award of attorney fees.

With that background, let me turn to the analysis. . . . I find that this case is exceptional; and I find that based on the combination of my finding after trial that Belcher committed inequitable conduct, as well as the weak litigating position of Belcher and some of the litigation conduct undertaken by Belcher. So all three of those reasons, in my view, along with the totality of the circumstances[,] here support a finding by more than, but certainly by[,] a preponderance of the evidence, that this case is exceptional.

First, with respect to inequitable conduct. In this case, that finding certainly makes this case stand out from all the other cases I have seen. I think I've had approximately 30 patent bench trials. I have never once found inequitable conduct. As best I could tell and recall, this is the sole instance in which I have ever found an inequitable conduct case proven; and so clearly it stands out and is truly exceptional in every way.

We all know in this case that finding was based on the actions and testimony of the plaintiff's Chief Science Officer. I'll refer to him as the "CSO." He was also the company's Head of Intellectual Property. But he admitted that he withheld information from Belcher's patent attorney and from the PTO. That withheld information included three prior art references, some of which were but-for material to patentability. And he withheld that information from the PTO even though he knew that Belcher had disclosed some of that same information to the FDA.

In particular, the CSO knew about prior art that disclosed epinephrine formulations with pH values that were later claimed in the '197 patent, which falsely described the benefits of the claimed pH range as unexpected.

I explained in detail in my post-trial opinion that I viewed . . . the CSO's testimony

---

[2] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

as not credible. And as we know, on appeal, the Federal Circuit unanimously affirmed the judgment of unenforceability of the '197 patent based on the finding of inequitable conduct.

I know it doesn't automatically . . . follow from a finding of inequitable conduct that a case is exceptional and that fees should be awarded, but here it very much does follow, and it is not the only thing that makes this case exceptional.

I also agree . . . with Hospira that Belcher's infringement case was exceptionally weak. The asserted claims here required a concentration of L-epinephrine of 1.0 to 1.06 milligrams per milliliter, but Hospira's NDA product has a concentration that is quite less.

So Belcher was forced to concede that Hospira's NDA product does not literally infringe the asserted claims. And this case has always been about the doctrine of equivalents. So early on in the case, Hospira moved for Rule 11 sanctions, arguing that Belcher's infringement case was frivolous because of the tremendous difference between the claimed concentration and the concentration in Hospira's product.

And although I declined at the time to award sanctions, I did also note that Hospira's arguments might be quite likely to persuade me that this case is exceptional for the purposes of awarding fees under Section 285. And I made sure that Belcher understood and realized it was being warned from the get-go.

And notwithstanding [the] plaintiff's efforts to try to argue otherwise today, I think among the things that makes this case exceptional is that, on the merits of the infringement case, it did largely end up where I was afraid [–] and where Hospira had warned me [–] it might end up. That's not the sole basis for the exceptionality finding, but it certainly is strong support.

Later, during the *Markman* proceedings, I rejected Belcher's "partial solution" theory under which . . . the concentration limitation of 1.0 to 1.06 need only be present at any point during preparation of the formulation.

I also rejected the opinion of Belcher's expert, which . . . conflated improperly the concepts of concentration and amount of epinephrine.

Despite that clear ruling during expert discovery, Belcher attempted to downplay the relevance of claim construction on the infringement analysis. As the case progressed to trial . . . and even after trial, Belcher never, in my view, really attempted to show that the concentration in Hospira's NDA product is equivalent to the [claimed] concentration. Instead, Belcher seemed to merely continue to press arguments based on amounts and overages and not concentrations.

Ultimately, I found in my opinion that Belcher had provided no evidence, let alone a preponderance of the evidence, that the concentration in the defendant's product was equivalent to the concentration in the claims.

As Hospira correctly writes in connection with the briefing on the pending motion, "the Court's findings corroborated what Hospira had demonstrated before this litigation was even filed and in its earliest days: that Belcher could never establish that" the concentration in the defendant's product is equivalent to the range that was quite different, as stated in the claims.[3]

Even Belcher acknowledges in its briefs that it lost this case lopsidedly. In my view, given [the] weakness of its infringement case, Belcher should not have filed this lawsuit; and [it] certainly should not have proceeded with it in the manner and for the length of time that it did. That is, the interest of deterrence strongly supports a finding of exceptionality and awarding of attorneys' fees.

... [T]hat concern of deterrence is only heightened by the fact that this is a case in the pharmaceutical drug market in which the plaintiff had an extra incentive and extra motivation to ... pursue what it should have understood was at best an exceptionally weak case.

It had an incentive to go forward nonetheless in hopes that a stay would remain in place and keep the defendant's competing product off the market.

And so not only does deterrence favor ... granting this motion, but it is of particular concern under the totality of circumstances here.

There is yet a third reason why this case stands out and that the Court is finding it exceptional and awarding fees, and that is some of Belcher's litigation tactics. For example, during the supplemental *Markman* proceedings, Belcher proposed a claim construction for the pH term that directly contradicted the construction it was proposing in parallel proceedings before another District Court.

I don't think that the analogy to ... a personal-injury or other types of cases where a plaintiff argues theories in the alternative ... really works here.

The issue in front of me at that time really was focused on whether the pH limitation refers to an intermediate product or only to a final product. And that presented a claim construction question, essentially a question of law: what would a person of ordinary skill in the art reading this claim think ... the limitation applied to? And I don't see how a patentee applying that same standard in two different cases could say in one instance it applies to the intermediate product, but in another instance it

---

[3] D.I. 259 at 10.

4

applies to the final product. I think that was not an appropriate manner [of] proceeding in this Court at that time in this case.

Moreover, before trial, Belcher stipulated that certain products were prior art. But after trial, Belcher attempted to escape from its stipulations without offering any good reason why it should be permitted to do so . . . .

[T]he inequitable conduct [is] far and away the most important [of the three reasons] . . . this case stand[s] out . . . but [the other reasons are] also the extraordinary weakness of Belcher's infringement case and that they were on notice of that weakness from very early on in the case, as well as the unreasonable litigation tactics I've noted. For all those reasons, Hospira has more than met its burden of proving by a preponderance of the evidence that this case is exceptional.

I've considered . . . all of Belcher's arguments against awarding fees. They're all unavailing. Let me touch on a few.

Belcher emphasizes that it prevailed on several motions throughout the case, including the motion for sanctions and a motion for partial summary judgment of noninfringement. That does not really help Belcher very much. A defendant or a prevailing party doesn't need to win every . . . motion, every step, every day in order to be the prevailing party and to prove that a case is exceptional.

And although I denied the sanctions motion, it was a pretty serious motion, and it led to the warnings that I've already talked about. There was nothing frivolous about that sanctions motion.

The summary judgment decision was not an assessment of the evidence. It came before claim construction and . . . largely, if not entirely, before discovery, and it had to do with legal issues.

Today, Belcher . . . suggests that this case is really just about one bad witness or maybe two bad witnesses performing badly at trial and poorly drafted claims. I think, as is clear from the totality of the circumstances from the record, from my detailed opinion, and from my remarks today, that's not what this case is. If it really were just about a witness testifying poorly at trial or poorly drafted claims, the plaintiff would be right, those things happen in many patent cases. But this case is about much more than that. I've already explained what makes it exceptional.

. . . [A]s must be clear, I disagree with Belcher's suggestion that no deterrence is necessary. For the reasons I've said, I think deterrence is quite important here. And the fact that Belcher evidently has no further association with its former CSO does not contradict my finding.

5

Belcher and other companies and other litigants should be deterred from allowing their officers to participate in fraudulently obtaining intellectual property rights and from pursuing costly litigation when they have obtained rights by inequitable conduct and have, at best, a weak infringement case.

Accordingly, I will exercise my discretion and award Hospira attorney fees for this case.

... I'm denying two portions of the fees requested by Hospira.

And I should say, I am viewing this case inclusively and as a whole, as the law, I understand, requires me to do. But nonetheless, for reasons I'll explain, there's two parts of the defendant's request that I'm not granting.

First, I'm not awarding the defense its expert fees. That request is directed not to § 285, but to my inherent authority to award sanctions. I recognize such sanctions may be appropriate when there's a finding of fraud or bad faith. And encompassed within the finding of inequitable conduct is a finding of fraud with respect to the Patent Office. But I do not believe, nonetheless, under the totality of circumstances, it would be appropriate to require Belcher to reimburse Hospira for its expert fees.

There has been no finding, not even any allegation . . . of fraud on the Court. It's not as if the plaintiff brought in an expert to waste time at trial and try to deceive the Court by . . . lying to the Court. I recognize my inherent authority is probably broad enough that I could award what the defendant is asking for here, but I just don't find that it is warranted under the totality of circumstances.

And my decision is the same with respect to the defendant's request to be awarded its fees incurred in connection with the plaintiff's appeal to the Federal Circuit. That is, I'm denying the request for recovery of the fees incurred in connection with that appeal.

As an initial matter, the appeal itself was not exceptional. Plaintiff was well within its rights to appeal and actually narrowed that appeal to only challenging the inequitable conduct finding. There was nothing frivolous or vexatious or even unreasonable about those decisions by the plaintiff.

Now, I recognize I don't need to find the appeal itself to be independently exceptional in order to give the defendant what it's asking for, but I think it is noteworthy that the appeal was in no way exceptional.

And, in fact, my thought is that because this finding of inequitable conduct was so

extraordinary and so exceptional and, again for me, was the only time I have ever found it, and a finding of inequitable conduct no doubt could have consequences for people's reputations, for companies' reputations and could adversely affect careers, and these findings are rare, I think it was entirely understandable and reasonable for Belcher to ask a higher court to carefully review my finding of inequitable conduct.

Another way of putting that is, when I think about deterrence, I don't think that it favors granting the fees for the appeal. This was not an appeal that I would want to have deterred.

. . . .

Finally, let me talk just briefly about the reasonableness of the fee request. Belcher challenges the reasonableness of Hospira's requested fees. In particular, Belcher argues that the rates charged by Hospira's lead counsel in New York surpass rates charged by Delaware attorneys. The Federal Circuit has explicitly approved an award of attorney fees under Section 285 at the rates the attorneys actually charge.[4]

And I think everybody agrees it's within my discretion to award the fees based on the rates that were actually charged by the lawyers who actually litigated.

And here there is reason to do so. Hospira's counsel has a long relationship representing Hospira in numerous jurisdictions across the country and extensive experience litigating patent disputes like this one. It was a very logical choice [for] Hospira to stick with the lead counsel that it had used before in matters like this.

Further, in my view, the relevant market here is the market for national counsel that practices patent litigation in the District of Delaware. For that market, all the evidence that I have seen is that the fees charged by [the] defendant's national counsel are entirely reasonable.

[Belcher points out] that there are plenty of Delaware lawyers who are fully capable of litigating cases like this as lead counsel, [and] I agree entirely. There are a lot of . . . outstanding Delaware lawyers who can and do litigate cases like this, including as lead counsel, and nothing in my decision should suggest that I think otherwise.

But that doesn't mean that Hospira has to choose only Delaware counsel as its lead trial counsel; or, more pertinently, it doesn't mean that there was anything unreasonable about the fees that Hospira incurred in defending itself in this litigation.

---

[4] *E.g., SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1311 (Fed. Cir. 2019).

7

In that regard, I would also note there's a lot of back and forth in the briefing about, well, the plaintiff only spent X number of millions of dollars and the defendant spent more . . . millions of dollars; that, too, does not make anything that the defendant did unreasonable.

And I agree with the defendant that they had more at stake in this case. The plaintiff was asserting a patent that does not expire until the year 2034. And had Hospira lost this case, it would have been off the market with its drug product for all the time until 2034. By contrast, all that Belcher had at stake was a patent that it . . . had received after prosecuting the patent application in a manner that was marred by inequitable conduct, a patent that it never should have obtained.

I agree with the following statement from Hospira: "The hours expended by Hospira's attorneys were reasonably necessary to defend against an infringement case that never should have been brought, on a patent that never should have issued."[5]

I further agree with Hospira that it has met its obligation under Rule 54(d)(2)(B)(3) to state the amount sought or to provide a fair estimate of the requested fees.

So, for all those reasons, I am granting in part and denying in part the defendant's motion. I will ultimately enter an order that will require Belcher to reimburse Hospira for every dollar that Hospira reasonably expended on counsel litigating this case to trial in this Court. And that will include fees incurred on motions and matters on which Hospira did not prevail. That is, for example, a motion for sanctions, which the defendant lost, but was all a part of the overall litigation, which was litigated in a reasonable manner by the defendant.

. . . I am excluding only the expert fees and the attorney fees incurred solely in connection with Belcher's appeal.

February 3, 2022  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE

---

[5] D.I. 272 at 7.